**FILED**

MAR 0 2 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Lead Case No. CV 19–56–M–DWM |
| Plaintiffs, | |
| and | Member Case No. CV 19–60–M–DWM |
| SWAN VIEW COALITION, et al., | |
| Consolidated Plaintiffs, | ORDER |
| vs. | |
| CHIP WEBER, et al., | |
| Defendants, | |
| and | |
| DAVID BERNHARDT, et al., | |
| Consolidated Defendants. | |

In these consolidated cases, environmental groups challenge decisions by the

U.S. Forest Service and U.S. Fish and Wildlife Service (collectively "Forest

Service") regarding the 2018 Land Management Plan for the Flathead National

Forest. Claim Two in the lead case, brought by WildEarth Guardians and Western

1

Watersheds Project (collectively "WildEarth"), alleges violations of the Travel Management Rule and Executive Order 11644. The Forest Service seeks to dismiss that claim. The motion is granted in part and denied in part.

**BACKGROUND**

## I. Travel Management on Forest Service Lands

Off-road vehicle use in the national forests is governed by Executive Order 11644 as amended by Executive Order 11989, the 2005 Travel Management Rule, and the 2015 Over-Snow Vehicle Rule.

### A. Executive Orders 11644 and 11989

In 1972, President Nixon issued Executive Order 11644, directing federal land management agencies to adopt regulations governing off-road vehicles on public lands. 37 Fed. Reg. 2877 (Feb. 8, 1972). It instructs agencies "to provide for administrative designation of the specific areas and trails" where off-road vehicles are permitted. *Id.* at § 3. Designations must comply with enumerated "minimization criteria," including that areas and trails shall be located to minimize "damage to soil, watershed, vegetation, or other resources of the public lands," "harassment of wildlife or significant disruption of wildlife habitats," and "conflicts between off-road vehicle use and other existing or proposed recreational uses." *Id.* In 1977, President Carter issued Executive Order 11989, amending Executive Order 11644 to require the closure of areas and trails where off-road

2

vehicle use "will cause or is causing considerable adverse effects." 42 Fed. Reg. 26,959 (May 24, 1977).

## B. Travel Management Rule

Until 2005, the Forest Service regulations implementing Executive Orders 11644 and 11989 allowed each national forest to designate areas and trails for off-road vehicle use through existing land management processes. 36 C.F.R. § 295.2 (repealed 2005). Under that approach, "many National Forests managers kept their Forests generally open to motor vehicle use unless there was a pressing reason for closure." *Winter Wildlands All. v. U.S. Forest Serv.*, No. 1:11-CV-586-REB, 2013 WL 1319598, at *3 (D. Idaho Mar. 29, 2013). In 2005, recognizing the need for updated regulations to address increased use and capabilities of modern off-road vehicles, the Forest Service issued the Travel Management Rule. 70 Fed. Reg. 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. pt. 212, 251, 261, and 295).

Subpart B of the Travel Management Rule requires national forests to designate areas and trails where off-road vehicle use is permitted and prohibits all other use. 36 C.F.R. §§ 212.50(a), 212.51(a), 261.13. It sets forth procedures the national forests must follow in making designations and codifies the minimization criteria from Executive Order 11644. *Id.* at §§ 212.52, 212.53, 212.55(b). However, Subpart C of the Travel Management Rule exempted over-snow vehicles from Subpart B's requirements. Specifically, the rule provided that "[u]se by over-

3

snow vehicles on National Forest System roads and National Forest System trails and in areas on National Forest System lands *may be allowed, restricted, or prohibited.*" *Id.* at § 212.81(a) (repealed 2015) (emphasis added). Subpart C thus gave national forests discretion to designate areas and trails for over-snow vehicles but did not require them to do so.

## C.     Over-Snow Vehicle Rule

In 2013, a court ruled that the Travel Management Rule's exemption of over-snow vehicles violated Executive Order 11644 and ordered the Forest Service to issue a new rule. *See Winter Wildlands All.*, 2013 WL 1319598, at *14. In 2015, the Forest Service issued the Over-Snow Vehicle Rule, amending Subpart C of the Travel Management Rule. 80 Fed. Reg. 4500 (Jan. 28, 2015) (codified at 36 C.F.R. §§ 212.80, 212.81). The rule requires national forests that receive enough snow to designate areas and trails for over-snow vehicle use according to Subpart B of the Travel Management Rule. 36 C.F.R. §§ 212.80(a), 212.81. It includes a grandfather provision, allowing national forests that previously designated over-snow vehicle routes to maintain those designations. *Id.* at §§ 212.80(b), 212.81(b).

## II.     Travel Management on the Flathead National Forest

In 2006, the Flathead National Forest designated 787,000 acres and 3,000 miles of roads and trails for over-snow vehicle use. (Am. Compl., Doc. 23 at ¶ 231.) The designations were implemented as the Winter Motorized Recreation

Forest Plan Amendment, known as Amendment 24, to the 1986 Forest Plan, the Forest's then-governing land management plan. (*Id.* at ¶¶ 226, 229.) In 2018, the Flathead National Forest replaced the 1986 Forest Plan. (*Id.* at ¶¶ 30–32.) The 2018 Forest Plan incorporates Amendment 24's over-snow vehicle use designations under the Over-Snow Vehicle Rule's grandfather provision. (*Id.* at ¶¶ 226–27, 240.) It also identifies 567 additional acres as suitable for over-snow vehicle use and provides for site-specific planning within three years to determine whether any of the 567 acres should be designated. (*Id.* at ¶¶ 246–47.)

### III. Procedural History

WildEarth filed suit on April 2, 2019, seeking declaratory and injunctive relief. (Doc. 1.) Swan View filed suit soon after, seeking the same relief. (Doc. 1 in CV 19–60–M–DWM.) The cases were consolidated on June 27, 2019. (Doc. 18.) WildEarth filed an Amended Complaint on August 7, 2019. (Doc. 23.) Claim Two of the Amended Complaint alleges the Forest Service violated the Travel Management Rule by failing to demonstrate that Amendment 24's grandfathered designations and the 567-acre suitability determination comply with the minimization criteria. (*Id.* at ¶¶ 263–72.) On September 12, 2019, The Forest Service moved to dismiss Claim Two. (Doc. 28.)

5

## SUMMARY CONCLUSION

The Forest Service contends that WildEarth's challenge to Amendment 24 is too late while its challenge to the 567-acre suitability determination is too early. The challenge to Amendment 24 is indirect; WildEarth's claim is based on the 2018 decision incorporating Amendment 24. That claim is timely. However, with respect to the suitability determination, WildEarth has prematurely challenged a programmatic decision that does not authorize any over-snow vehicle use at this time. It must wait until a site-specific designation is made to bring its claim.

## LEGAL STANDARDS

The Forest Service moved to dismiss Claim Two for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 28.) However, statutes of limitations on claims against the federal government are not jurisdictional. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995). To the extent the Forest Service's motion is based on the statute of limitations, it is construed as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Id.* "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted). In resolving a Rule 12(b)(6) motion, the complaint's factual allegations

6

are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

The Forest Service seeks to dismiss the portion of Claim Two challenging the 567-acre suitability determination as unripe. Because ripeness is jurisdictional, this aspect of the Forest Service's motion was properly brought under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rule 12(b)(1) challenges are either facial or factual. *Leite v. Crane*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks omitted). In resolving a facial challenge, courts accept all allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

The Forest Service did not specify whether its motion is facial or factual. Although it references evidence outside the pleadings, *(see* Doc. 29-1), that evidence does not contradict the Amended Complaint and the Forest Service ultimately accepts WildEarth's allegations as true. The motion is thus a facial motion. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) (treating motion to dismiss as facial where movant accepted allegations as true).

7

ANALYSIS

## I.    Statute of Limitations

The Forest Service argues that challenges to Amendment 24's over-snow vehicle use designations, which were made in 2006, are barred by the six-year statute of limitations on claims against the federal government. *See* 28 U.S.C. § 2401. The argument misconstrues WildEarth's claim. As discussed above, the Over-Snow Vehicle Rule's grandfather provision allows the Forest Service to incorporate previous designations for over-snow vehicle use. 36 C.F.R. §§ 212.80(b), 212.81(b). WildEarth contends that before invoking the grandfather provision, the Forest Service must determine that the previous designations comply with Subpart B of the Travel Management Rule. (Doc. 23 at ¶ 40.) The proper interpretation of the grandfather provision goes to the merits of Claim Two, not its timeliness. But if WildEarth is correct, then Amendment 24's compliance with the Travel Management Rule is relevant to whether the 2018 Forest Plan complies with the Travel Management Rule. WildEarth's theory of the Over-Snow Vehicle Rule and the Travel Management Rule thus puts Amendment 24 at issue. Contrary to the Forest Service's characterization, it does not convert Claim Two into a direct challenge to Amendment 24. Rather, WildEarth only challenges the 2018 decision to incorporate Amendment 24 into the revised Forest Plan, which the Forest Service concedes is timely. (Doc. 46 at 4–5.)

8

## II.    Ripeness

The Forest Service argues that the 567-acre suitability determination is a programmatic decision that will not be ripe until specific areas or trails within that acreage are designated for over-snow vehicle use. WildEarth responds that because the Forest Service claims the suitability determination complies with the Travel Management Rule, the determination is a final decision subject to judicial review. The Forest Service has the better argument.

The ripeness doctrine functions to prevent courts from deciding "abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). To determine whether an agency decision is ripe, courts consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). All three factors weigh against allowing judicial review of the suitability determination.

## A.    Hardship to Plaintiffs

First, delayed review would not cause hardship to WildEarth because the suitability determination does not authorize any over-snow vehicle use on the 567 acres. (Doc. 23 at ¶ 247.) To be sure, neither the Travel Management Rule nor the Over-Snow Vehicle Rule discusses "suitability." The suitability determination seems to be an interim planning tool used by the Forest Service. In that sense, the suitability determination in the 2018 Forest Plan is like the logging authorization in *Ohio Forestry. See* 523 U.S. at 729. In that case, the challenged forest plan permitted logging on 126,000 acres of national forest land but left approval of specific logging projects for a later date. *Id.* The Supreme Court concluded that challenges to the plan's logging authorization would not be ripe until the Forest Service approved site-specific logging projects. *Id.* at 739. In analyzing whether the plan caused hardship to the plaintiffs, the Court explained that "the Plan does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Id.* at 733. Here, the suitability determination does not give anyone a legal right to operate over-snow vehicles on the 567 acres, nor does it prevent WildEarth from challenging over-snow vehicle use in the future.

**B.      Interference with further Administrative Action**

Second, judicial intervention at this point would interfere with further

administrative action.  Per the Amended Complaint, the Forest Service will

"initiate site-specific planning within three years from the date of the final [Record

of Decision] for the 2018 Forest Plan where an existing order may need to be

changed in light of the 2018 Forest Plan suitability direction."  (Doc. 23 at ¶ 247.)

Like in *Ohio Forestry*, immediate judicial review "could hinder agency efforts to

refine its policies" during the later site-specific planning.  523 U.S. at 735.

**C.      Further Factual Development**

Finally, judicial review would benefit from further factual development.

WildEarth alleges that the 567 suitable acres are in two distinct areas of the

Flathead National Forest—an area by Marias Pass in the Middle Fork region and

an area between Soldier Creek and Bruce Creek in the South Fork region.  (Doc.

23 at ¶ 246.)  The Travel Management Rule requires a particularized inquiry into

each area designated for over-snow vehicle use.  *WildEarth Guardians v. Mont.*

*Snowmobile Ass'n*, 790 F.3d 920, 930, 932 (9th Cir. 2015).  Judicial review of the

suitability determination would involve an abstract consideration of how the Travel

Management Rule's detailed criteria apply to the 567 acres, before knowing which

specific areas and trails will even be designated.  And, in the end, judicial review

may be unnecessary if the Forest Service never designates any of the 567 acres for

11

over-snow vehicle use. *See Ohio Forestry*, 523 U.S. at 736. At this juncture, judicial review of the 567-acre suitability determination is premature.

CONCLUSION

IT IS ORDERED that the Forest Service's motion to dismiss (Doc. 28) is GRANTED IN PART and DENIED IN PART. Claim Two's challenge to the 2018 decision incorporating Amendment 24 may proceed. However, challenges to the suitability determination are unripe.

DATED this __2nd__ day of March, 2020.

15:25 P.M.

Donald W. Molloy, District Judge
United States District Court