IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, et al., | Lead Case No. CV 19–56–M–DWM |
| Plaintiffs, | |
| and | Member Case No. CV 19–60–M–DWM |
| SWAN VIEW COALITION, et al., | |
| Consolidated Plaintiffs, | OPINION and ORDER |
| vs. | |
| KURTIS E. STEELE, et al., | |
| Defendants, | |
| and | |
| DEB HAALAND, et al., | |
| Consolidated Defendants, | |
| and | |
| MONTANA LOGGING ASSOCIATION, et al., | |
| Defendant-Intervenors. | |

This case concerns the Revised Forest Plan for the Flathead National Forest. Plaintiffs and Consolidated-Plaintiffs are environmental organizations that challenged decisions by the United States Forest Service and the United States Fish

1

and Wildlife Service (collectively "Federal Defendants") stemming from the Revised Plan.[1] An opinion was issued in June 2021 that granted Plaintiffs' relief on a handful of the claims brought under the Endangered Species Act ("ESA") and remanded the provisions of the 2017 Biological Opinion ("the 2017 BiOp") that violated the ESA without vacatur. *See* (Doc. 116); *see also WildEarth Guardians v. Steele*, 2021 WL 2590143, *23 (D. Mont. June 24, 2021). Plaintiffs and Consolidated-Plaintiffs now seek to recover attorneys' fees and costs under the citizen suit provision of the ESA, 16 U.S.C. 1540(g)(4), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412(d). (Docs. 155, 157.)

On October 26, 2022, Consolidated-Plaintiffs and Federal Defendants filed a joint motion indicating that they had resolved Consolidated-Plaintiffs' claim for attorney fees and costs. (Doc. 166.) That joint stipulation is approved. Accordingly, the only remaining issue is Plaintiffs' request for fees and costs. (*See* Doc. 157.)

## ANALYSIS

When a plaintiff seeks an award for attorneys' fees and costs, an inquiry of reasonableness is key. Because Plaintiffs achieved limited success and their billing calculations were generally reasonable, their motion is granted in part and denied

---

[1] Record citations are to the lead case, CV 19–56–M–DWM.

in part. For the reasons discussed below, Plaintiffs are awarded $293,061.14 in fees and costs under the ESA.

## I. Statutory Basis for Fees

The ESA provides that "any person may commence a civil suit on his own behalf" to enforce its provisions and regulations. 16 U.S.C. § 1540(g)(1). When a court issues a final order in a citizen suit brought under this section, it "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id.* § 1540(g)(4). Such an award may be "appropriate" when a party achieves "some degree of success on the merits," even if the success is not major. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). In cases with both an ESA and EAJA fee request, the EAJA request is determined only if no fee is awarded under the ESA. *See Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, 2014 WL 7331039, at *1 (D. Or. Dec. 19, 2014). Because Plaintiffs recover attorney fees and costs under the ESA here, there is no need to determine fees and costs under the EAJA.

## II. Plaintiffs' Request

Plaintiffs initially sought $475,669.30 in fees, reflecting 1847.44 hours of work by four attorneys, and $1,908.62 in costs, reflecting filing fees and the costs of printing, travel, and lodging, for a total of $477,577.92. (Doc. 158 at 19–21.) Federal Defendants opposed the request, insisting that the award should be no more than $149,813.58. (Doc. 164 at 27.) In their reply, Plaintiffs reduced their

3

request for fees by $116,750.80 and costs by $121.00 for an amended total of $360,706.12, concessions they attribute to "billing discretion." (Doc. 165 at 1–2.)

### III. The Lodestar Method

"A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Upon showing that the plaintiff has "prevailed" in this sense, the next step is determining the amount of a fee award. *See id.* at 114 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). This award is generally assessed using the "lodestar method," which considers "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Here, the Federal Defendants broadly assert that Plaintiffs' requested attorneys' fees are unreasonable to the extent they are "excessive, duplicative, or otherwise unnecessary." (Doc. 164 at 1.) However, they do not dispute the reasonableness of the hourly rates charged by Plaintiffs' counsel. (Doc. 164 at 11 n. 3.) Accordingly, the fee awarded depends on an assessment of "the number of hours reasonably expended on the litigation."

In considering the reasonable time spent on the case, courts first exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Courts then assess the requesting party's level of success. In cases where the plaintiff has achieved only limited success, the amount of success is determined in

4

two steps: (1) "consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded," and (2) "consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (cleaned up). Ultimately, "the district court has discretion in determining the amount of a fee award." *Hensley*, 461 U.S. at 437. However, the court must "provide a concise but clear explanation of its reasons" and "should make clear that is has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

Plaintiffs are a partial prevailing party, which makes them entitled to a fee award in in this matter. *Ass'n of California Water Agencies v. Evans*, 386 F.3d 879, 884 (9th Cir. 2004). Accordingly, the remainder of the fee award analysis is outlined in detail below.

### A. Reasonable Expenditure of Hours

Federal Defendants first argue that a number of Plaintiffs' attorney hours are unreasonable and unjustified and should be excluded as "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. With limited exception, those arguments generally lack merit. Federal Defendants' specific objections to Plaintiffs' fee request are discussed individually below.

5

### 1. Plaintiffs' Motions and Appeal

Federal Defendants first claim that Plaintiffs' motions practice during litigation was unnecessary or excessive and that time spent on these motions must be excluded as unreasonable. Specifically, Federal Defendants claim that Plaintiffs' motion to supplement the administrative record, (*see* Docs. 42, 45), and their motion to amend or correct the Court's June 24, 2021 Judgement, (*see* Doc. 127), were unnecessary because only one of the documents produced from the motion to supplement was used in Plaintiffs' summary judgement briefing and because Plaintiffs' motion to amend or correct merely rehashed the summary judgment brief. Thus, Federal Defendants argue that Plaintiffs should not be compensated for their time working on these motions. Additionally, Federal Defendants claim that the hours Plaintiffs billed for their cross appeal and their fees motion were excessive because the cross-appeal was dismissed and because these tasks did not demand any of Plaintiffs' specific expertise.

Litigation is a dynamic and tactical process. Time "spent investigating possible avenues of relief is not necessarily unreasonable just because those avenues prove to be dead ends." *Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020). Therefore, just because Plaintiffs chose not to pursue some claims or because they encountered dead-ends and followed different litigation paths does not mean time spent evaluating other claims and paths is excessive. Thus, these hours are reasonable and will be considered as part of the lodestar.

### 2. Number of Attorneys

Federal Defendants further argue that Plaintiffs' hours are excessive and duplicative because a team of three to four attorneys participated in and billed time throughout the litigation. Accordingly, Federal Defendants insist that the approximately 400 hours billed by Plaintiffs for prelitigation work reflect a significant duplication of hours and is excessive. They likewise argue that because four attorneys contributed to Plaintiffs' summary judgement briefing, the hours billed are "unjustifiably excessive, especially given ... Plaintiffs' claim of specialized expertise in environmental litigation." (Doc. 164 at 19–20.) They further claim "[i]t is also excessive given . . . Plaintiffs' limited success on summary judgment." (*Id.* at 20.)

These objections are unpersuasive. Although concerns regarding duplicative billing are valid, Federal Defendants' only evidence of such duplicative billing is that three to four of Plaintiffs' attorneys participated in each step of the litigation process. Even attorneys with specialized expertise may choose to work in teams. This fact does not, on its own, suggest that the hours billed were excessive or duplicative. Further, lack of success on the merits of the litigation does not indicate that hours spent preparing the motion for summary judgment were unreasonable. Accordingly, a reduction on this ground is not warranted.

### 3. Administrative Record Review

Federal Defendants next assert that the 150.7 hours that Plaintiffs spent reviewing the Administrative Record was unreasonable because courts in other cases have found 158 hours, *see Fed'n of Fly Fishers v. Daley*, 200 F. Supp. 2d 1181, 1191 (N.D. Cal. 2002), and 193 hours, *see Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2008 WL 5210945, at *11 (N.D. Cal. Dec. 11, 2008), to be excessive to review other administrative records. (Doc. 164 at 20–21.) This argument is once again unpersuasive.

Each case and administrative record is different, and the complete administrative record in this case was almost 235,000 pages long. (Doc. 158 at 16.) At a blistering pace of nearly 26 pages per minute, 150.7 hours is not an unreasonable amount of time to review 235,000 pages of technical documents. While counsel in *Federation of Fly Fishers* and *Citizens for Better Forestry* exceeded the amount hours billed by Plaintiffs here, those cases are unique and different to this one. After all, a fee determination is based on "the facts of each case." *Hensley*, 461 U.S. at 429. Accordingly, the requested hours are not reduced on this basis.

### 4. Length of the Complaint

Federal Defendants further argue that because Plaintiffs' complaint was 62 pages long and contained 220 paragraphs, it went beyond "a short and plain statement of the claim" as required by Federal Rule of Civil Procedure 8, making

8

the time spent preparing it excessive. (Doc. 164 at 18–19.) This objection falls flat. Even under the "short and plain statement" standard of Rule 8, a complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Complaint was long and detailed, but it reflected the complexity of the matters before the Court and was not clearly excessive or unreasonable. A reduction is therefore not warranted on this basis.

### 5. Other Miscellaneous Tasks

Federal Defendants argue that Plaintiffs' time spent on client development, media, *pro hac vice* applications, travel time for attorneys who did not speak during hearings, and time spent conferring with counsel in the member case before consolidation are non-compensable. While they are partially correct, Plaintiffs have already accommodated voluntarily reduced their fee request to accommodate this concern. Plaintiffs initially reduced their billed time by 177.34 hours to remove non-compensable time. (*See* Docs. 158-1, 158-2, 158-3, 158-4.) Now Plaintiffs have further reduced their requested fees by exercising billing judgement to remove an additional 414.53 hours. (*See* Doc. 165 at 14.)

Plaintiffs' discretionary billing judgment already decreased their fee request by $116,871.80, (*see* Doc. 165 at 14), adequately addressing Defendants' concerns about excessive, duplicative, and unreasonably hours billed, *see Walker v. Dep't of Housing & Urban Dev't*, 99 F.3d 761, 770 (5th Cir. 1996) (indicating a reduction

9

to reflect an absence of "billing judgment" may be appropriate if plaintiff cannot show they exercised such judgment). Thus, further reduction on this basis is not warranted.

**B.    Level of Success**

The next step is to ask whether Plaintiffs were unsuccessful on any claims that were unrelated to the claims on which they succeeded. *Webb*, 330 F.3d at 1168. Unrelated claims are claims that are "entirely distinct and separate from the claims on which the plaintiff prevailed." *Id.* However, there need not be "commonality of both facts and law to conclude that claims are related . . . . Rather, the focus is to be on whether the unsuccessful and successful claims arose out of the same course of conduct." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174 (9th Cir. 2019) (internal quotation marks omitted).

Here, Plaintiffs' final complaint alleged two claims for relief. (*See* Doc. 75.) First, Plaintiffs alleged that Defendants violated the Travel Management Rule, 36 C.F.R. § 212, and Executive Order 11644 by failing to consider and mitigate the impacts of over-snow vehicle use in the Revised Forest Plan. (Doc. 75 at 67–69.) Second, Plaintiffs alleged that Defendants violated the ESA, 16 U.S.C. § 1536, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a), by failing to adequately consider and justify jeopardy determinations regarding grizzly bear, Canada lynx, and bull trout in the 2017 Biological Opinion for the Revised Forest Plan. (Doc. 75 at 69–75.) Plaintiffs also alleged that Defendants violated the ESA,

10

16 U.S.C. § 1536, and APA, 5 U.S.C. § 706(2)(a), by improperly relying on the allegedly deficient 2017 Biological Opinion when adopting the Revised Forest Plan. (*Id.*) The parties filed cross-motions for summary judgement. (*See* Docs. 76, 86, 90.) The Court granted Plaintiffs' motion for summary judgement to a limited extent as to Plaintiffs' second claim for relief and granted Defendants' motion for summary judgment in all other respects. (Doc. 116 at 64.)

### 1. Related Claims

The first question in assessing relative success is whether Plaintiffs' unsuccessful Travel Management claim is "related" to their ESA claims. As outlined above, both claims arose from the same 2018 Flathead Forest Plan revision. Moreover, Plaintiffs' alleged violations of the Travel Management Rule also have impacts on grizzly bears and other listed species that were subjects of Plaintiffs' ESA claims. Both claims thus arise out of the same set of facts and course of conduct, even though they are based on different legal theories. *See Webb*, 330 F.3d at 1169 (holding that a plaintiff's claims were related because they "arose out of a common core of facts and a common course of conduct: Plaintiffs' arrest, detention, and prosecution"). Therefore, Plaintiffs' claims are related and they can recover attorney fees for pursuing the unsuccessful travel management claim.[2]

---

[2] Even if this were not the case, exclusion is warranted only if the hours can be "isolated." *Webb*, 330 F.3d at 1169. Here, the time sheets of attorneys Mellgren

11

2.   **Partial Success**

The next step is to consider whether a reduction in Plaintiffs' attorneys' fees is warranted based on their partial success on the related claims. *See Webb*, 330 F.3d at 1168. "If the court concludes the prevailing party achieved 'excellent results,' it may permit a full fee award—that is, the entirety of those hours reasonably expended on both the prevailing and unsuccessful but related claims." *Id.* However, if the party does not achieve "results warranting a fully recoverable fee, the district court may apply a downward adjustment to the lodestar by award[ing] only that amount of fees that is reasonable in relation to the results obtained." *Id.* (internal quotation marks omitted).

Plaintiffs insist that they achieved "excellent results" in their litigation and they should be compensated for pursuing both their successful and unsuccessful claims. (Doc. 165 at 3.) They argue that even their limited success at summary judgement "spurred actions by the Agencies that improved outcomes for grizzly bears and bull trout on the Flathead National Forest." (*Id.*) Of Plaintiffs' three claims, they lost under the Travel Management Rule and only partially succeeded under the ESA. (Doc. 116 at 64.) And, the Court's Order makes clear that "with

---

and Nokes do not break down billed time by claim and the hours reasonably expended in pursuit of the travel management claim are not otherwise reasonably identifiable from their time sheets. (*See* Doc. 165-3; *cf.* Doc. 165-2.) Thus, any limited success on the travel management claim would instead be reflected in terms of the overall relief awarded. *Webb*, 330 F.3d at 1169.

limited exception, the record reflects that Federal Defendants met their statutory obligations." (*Id.* at 10.) Accordingly, Plaintiffs did not achieve "excellent results" entitling them to full compensation for all their claims. It is therefore appropriate to reduce Plaintiffs' fee award by applying a simple percentage reduction to the lodestar to reflect the degree of success that Plaintiffs achieved. *See Hensley*, 461 U.S. at 435 n.11 ("We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.") (internal quotation marks omitted).

C. **Fee Award**

An overall reduction of 20 percent is appropriate here. First, a global percentage reduction is warranted because, as discussed above, Plaintiffs' unsuccessful Travel Management Claim is related to the ESA claims upon which they prevailed. It is therefore inappropriate to audit Plaintiffs' timesheets to target time spent on Travel Management arguments. *See Webb*, 330 F.3d at 1169. As it relates to the actual amount of the global reduction, 20 percent reflects Plaintiffs' limited success in this litigation yet recognizes their ultimate success in helping to protect several threatened species. As made clear in the Court's substantive decision, while Plaintiffs' prevailed on only a "handful" of their ESA claims, those claims had wide-reaching implications, especially as it relates to the grizzly bear. (*See* Doc. 116 at 11.) Thus, while Plaintiffs prevailed on only half of their discrete ESA arguments, Plaintiffs' overall success is greater than that. *See Sorenson v.*

13

*Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (emphasizing that a fee award "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). Yet, Plaintiffs did not prevail on a number of their other ESA arguments and the Court declined to vacate the agency decision pending remand despite Plaintiffs specifically requesting such relief following the Court's initial order. (*See* Docs. 116 at 59–64, 127, 144.) As made clear by Plaintiffs themselves, this absence of vacatur is consequential in considering the success achieved. Accordingly, a 20 percent reduction is appropriate here, and Plaintiffs are entitled to $287,134.80 in fees under the citizen suit provision of the ESA.

Additionally, any award for fees-on-fees must be proportionally reduced in accordance with the fees awarded to Plaintiffs. *See Thompson v. Gomez*, 45 F.3d 1365, 1367–68 (9th Cir. 1995). The fees-on-fees amount after this 20 percent proportional reduction is an additional $4,138.72.

## IV. Costs

"A statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in [28 U.S.C.] §§ 1821 and 1920, absent explicit statutory instruction to that effect." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019). The citizen suit provision of the ESA allows a court to "award costs of litigation (including reasonable attorney and expert witness fees)." 16 U.S.C. § 1540(g)(4). The Ninth Circuit has "long

14

interpreted the phrase 'reasonable attorney's fees' to include certain litigation expenses" and has "repeatedly allowed prevailing parties to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove v. Wells Fargo Fin. Cal.*, 606 F.3d 577, 580 (9th Cir. 2010); *see, e.g.*, *All. for the Wild Rockies v. Savage*, No. 2019 WL 3293425, at *8 (D. Mont. July 22, 2019).

Here, Plaintiffs request $683.00 in copying costs and $1,104.62 in travel, meals, and lodging costs related to the litigation, equaling a total of $1,787.62. Because 16 U.S.C. § 1640(g)(4) explicitly allows the award of "reasonable attorney . . . fees," Plaintiffs can recover their non-taxable litigation expenses in this case. Therefore, Plaintiffs are entitled to $1,787.62 in non-taxable costs in addition to the $428.60 in costs already taxed to Defendants, (Doc. 126), but not yet paid, (Doc. 165 at 14 n.4).

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' motion for fees and costs (Doc. 157) is GRANTED IN PART and DENIED IN PART. Plaintiffs are awarded $291,273.52[3] in fees and $1,787.62 in costs under the ESA.

IT IS FURTHER ORDERED that the Consolidated-Plaintiffs and Federal Defendants' Joint Stipulation and Agreement regarding fees and costs (Doc. 166) is APPROVED. Federal Defendants shall pay fees and costs to Consolidated-

---

[3] This amount includes $4,138.72 for fees-on-fees.

15

Plaintiffs in the amount of $150,000 as outlined in the Joint Stipulation. Consolidated-Plaintiffs' motion for fees and costs (Doc. 155) is DENIED as MOOT.

DATED this 14th day of December, 2022.

_____
Donald W. Molloy, District Judge
United States District Court